# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHELE ROYAL, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 5:11-456 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| *Defendant.* | § | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Michele Royal ("Royal") brings this action under 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of the Social Security Administration("Commissioner") denying her *seventh* application for disability-based benefits under the Social Security Act.

As directed by General Order # 18,[1] the parties join issue through competing briefs. Royal prays for judgment reversing and remanding the case to the Commissioner for an award of benefits, or, alternatively, for further proceedings (Dkt. No. 13); the Commissioner requests affirmance of his decision. (Dkt. No. 15).

---

[1]    General Order #18 is dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders).  (Dkt. No. 3).

# I. Background

In June 2007, Royal applied for supplemental security income ("SSI") benefits[2] claiming disability due to: *depression, bursitis with impingement, asthma, mood disorder,* and *chronic obstructive pulmonary disease ("COPD").* (T. 114, 143).[3] After being denied benefits initially (T. 80), Royal requested a hearing before an administrative law judge ("ALJ"). (T. 57, 89). The case was assigned to ALJ Paul R. Armstrong ("ALJ Armstrong"), who conducted a remote video evidentiary hearing on August 7, 2009. (T. 57).[4] At the hearing, ALJ Armstrong received testimony from Royal, her adult daughter, Arielle Shaffer, and an impartial vocational expert ("VE"), Glee Ann Kehr. (T. 10-51).

ALJ Armstrong denied Royal's application. (T. 57-69). Royal appealed to the Appeals Council of the Social Security Administration's Office of Hearings and Appeals. (T. 112-13). The Appeals Council denied Royal's request to review ALJ Armstrong's determination. (T. 1-4). This rendered ALJ Armstrong's opinion the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Royal timely instituted this case on April 21, 2011. (Dkt. No. 1).

---

[2]    The SSI program, authorized by Title XVI of the Social Security Act and funded by general tax revenues, is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. *See* 42 U.S.C. §§ 1381, 1381a; *see also* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed. 2001), *available at* http://www.ssa.gov/OP_Home/handbook. Eligibility for SSI is based upon proof of *indigence* and *disability*. *See* H.R. REP. No. 92 231, (1972), reprinted in 1972 U.S.C.C.A.N. 4989, 5132 5133. See also 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A) (C).

[3]    "T." followed by a number refers to the page of the administrative record. (Dkt. No. 9).

[4]    Royal appeared in Syracuse, New York, and ALJ Armstrong presided over the hearing from Chicago, Illinois. (T. 16 42, 57).

## II. Preliminary Discussion

An initial overview of (a) the administrative decision-making mechanism, including substantive terms of art that figure prominently therein, and (b) the nature of judicial review will aid comprehension of ALJ Armstrong's decision, Royal's challenges thereto and the undersigned's analysis.

### A.   *Sequential Evaluation Procedure*

The law requires *individualized* determinations. *See Heckler v. Campbell*, 461 U.S. 458, 467 (1983). Hence, Commissioner Astrue generally must make both medical and vocational assessments in every case. Given the volume of claims presented on a nationwide basis, this is a huge task.

To accomplish this, the Commissioner utilizes a five-step, sequential evaluation procedure for adjudicating disability-based claims. *See* 20 C.F.R. § 416.920.[5] This model is "sequential" in the sense that when a decision can be

---

[5]    In this circuit, the Commissioner's five step sequential procedure is described as follows:

1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.    If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.    If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment [that meets or equals a] listed [impairment] in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.    If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.    If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

(continued...)

made at an early step, remaining steps are not considered. *See* 20 C.F.R. § 416.920. This evaluation process has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler*, 461 U.S. at 461) (use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations")).

1.  Shifting Burdens

*Claimants* bear the burden to present evidence sufficient to produce favorable findings under the first four steps. *DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998). When they successfully carry this burden, a *prima facie* case of disability is established. *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). The burden then shifts to the *Commissioner* to show in Step 5 that "there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico*, 134 F.3d at 1180; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. § 416.966.

The Commissioner can shoulder this burden by eliciting or consulting several sources of relevant evidence. The only source relevant to this case is expert vocational testimony. Witnesses qualified as "Vocational Experts" may testify as to whether jobs exist for a person with the claimant's precise abilities. *See* 20 C.F.R. § 416.966(e); *see also* SSR 00-4p, POLICY INTERPRETATION RULING:

---

[5](...continued)
*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179 80 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520, 416.920)); *see also Britt v. Astrue*, ___Fed. App'x ___, No. 11 2441 cv, 2012 WL 2331645, at *1 (2d Cir. June 20, 2012); *Lazore v. Astrue*, 443 Fed. App'x 650, 652 (2d Cir. 2011); *Kamerling v. Massanari*, 295 F.3d 206, 209 n. 3 (2d Cir. 2002) (citing *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)); *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *1-2 (SSA Dec. 4, 2000).

2.     <u>Residual Functional Capacity</u>

Before making findings at Steps 4 and 5, an ALJ must first assess and articulate a claimant's "residual functional capacity" ("RFC"). This refers to what claimants can still do in a work setting despite their physical and/or mental limitations caused by their impairments and any related symptoms, such as pain. *See* 20 C.F.R. § 416.945(a); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC). Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* SSR 96-8p, Title II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474, 1996 WL 374184, at *4 (SSA July 2, 1996).

Determining RFC often is crucial to a final decision. Commendably, the Commissioner provides detailed guidance for claims adjudicators in the form of both a regulation and an internal policy ruling. Collectively, these directives (a) identify various ordinary physical functions to be considered in context of an ordinary work schedule, (b) require function-by-function assessments of those activities, and (c) dictate that the ultimate RFC determination account for limitations imposed by both severe and non-severe impairments. *See* 20 C.F.R. §§ 416.945(a)(2), 416.945(b); SSR 96-8p, 1996 WL 374184, at **5, 7.

3.    Credibility Assessments

Pain is an important element in disability claims, and pain evidence must be thoroughly considered.  *See Ber v. Celebrezze*, 332 F.2d 293, 298-99 (2d Cir. 1964).  The best-informed (sometimes *only*) source of information regarding intensity, persistence and limiting effects of pain and other potentially disabling symptoms is the person who suffers therefrom.  Testimony from claimants, therefore, is not only relevant, but desirable.

On the other hand, such testimony is subjective and may be colored by the claimant's interest in obtaining a favorable outcome.  Hence, subjective symptomatology by itself cannot be the basis for a finding of disability.  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged.  *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.929; SSR 96-7p, POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996).

An ALJ is tasked with making credibility assessments, *i.e.*, deciding how much weight to give to claimants' subjective self-evaluations.  This, perhaps, is the most difficult task for any fact-finding adjudicator, administrative or judicial.  Fortunately, the Commissioner again provides explicit guidance in this area.  First, a formally-promulgated regulation requires     once an impairment is identified     consideration of seven specific, *objective* factors that naturally support or impugn *subjective* testimony of disabling pain and other symptoms.[6]

---

[6]    An ALJ must evaluate a claimant's symptoms, including pain, based on the medical evidence and other evidence, including he following factors:

(i)    claimant's daily activities;

(continued...)

Second, SSR 96 7p directs ALJs to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

SSR 96-7, 1996 WL 374186, at *2. The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when an ALJ rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Brandon v. Bowen*, 666 F. Supp. 604, 609 (S.D.N.Y. 1987).

---

[6](...continued)
(ii)   location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii)  precipitating and aggravating factors;
(iv)   type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v)    treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi)   measures claimant uses or has used to relieve pain or other symptoms; and
(vii)  other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c).

*B.     Judicial Review of Commissioner's Decision*

Judicial review of the Commissioner's denial of Social Security benefits is limited.  The court's abbreviated role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence.  *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry*, 675 F.2d at 467; *see also* 42 U.S.C. § 405(g).  When proper principles of law were applied, and when the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

Absent substantial evidence, however, the Commissioner's decision must be reversed.  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw*, 221 F.3d at 131).  Similarly, with few exceptions, failure to apply correct legal principles will result in reversal.[7]  *Bonner v. Astrue,* No. 07 CV 5015 (NGG), 2010 WL 4568875, at *1 (E.D.N.Y. Nov. 3, 2010) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)); *Vella v. Astrue*, 634 F. Supp. 2d 410, 416 (S.D.N.Y. 2009), *aff'd*, 394 Fed. App'x 755 (2d Cir. 2010).

Administrative law judges (who have the opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying) obviously are best-positioned to make accurate credibility determinations.  *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (function of Commissioner, not the

---

[7]      "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner.  *Bonner*, 2010 WL 4568875, at *1(citing *Townley*, 748 F.2d at 112).  The highly deferential standard of review regarding sufficiency of evidence is inapplicable to the Commissioner's conclusions of law.  *Townley*, 748 F.2d at 112; *accord Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

court, to appraise credibility); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (stating that deference is given to ALJ's decision because he is in the best position to assess the claimant's credibility). Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator. *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'"); *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."); *see also see also Larson v. Astrue*, 615 F.3d 744,751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness.").

Reviewing courts, however, cannot abdicate their statutory duty to determine whether correct principles of law were applied and if challenged decisions are supported by substantial evidence. Consequently, even credibility choices are examined in that limited context. Thus, when an ALJ neglects to employ the proper legal standard the court cannot subject his credibility determination to meaningful review. *See Meadors v. Astrue*, 370 Fed. App'x 179, 184-85 (2d Cir. 2010) (Because ALJ eschewed the two-step credibility inquiry required under 20 C.F.R. § 404.1529(c), remand required for a redetermination of claimant's RFC under the correct standard). Similarly, when an ALJ's credibility determination is based, in large part, on factual errors, the determination is not supported by substantial evidence and must be remanded. *See Horan v. Astrue*, 350 Fed. App'x 483, 485 (2d Cir. 2009) (ALJ's credibility

determination based largely on factual errors not supported by substantial evidence); *Pratts v. Chater*, 94 F.3d 34, 37-38 (2d Cir. 1996) (substantial evidence did not support ALJ's decision when ALJ made several factual errors in evaluating medical evidence).

### III. The Commissioner's Decision

ALJ Armstrong utilized the sequential evaluation procedure described earlier. Findings favorable to Royal at the first four steps established a *prima facie* case of disability. (T. 59-67). At Step 5, however, ALJ Armstrong determined, after "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (T. 68). He concluded, therefore, that Royal "has not been under a disability" and her claim was denied. *Id.*

ALJ Armstrong's complete findings and conclusions appear on nine pages, 59-68, of the administrative transcript contained in the record before the court. (Dkt. No. 9). For present purposes, it is necessary to spotlight only certain findings at Steps 2, 4 and 5. Specifically, at Step 2 he determined that Royal's chronic obstructive pulmonary disease is *not a severe impairment*. (T. 59-60). At Step 4, he determined that Royal has no past relevant work, but retains the capacity for *simple, unskilled light work*. (T. 61-62, 67).[8] At Step 5, and relying on opinion testimony of VE Kehr, he concluded that Royal can engage in substantial gainful employment as a *sorter* and an *after-hours housekeeper*. (T. 43-44, 68).

---

[8]     The only limitations placed by ALJ Armstrong on Royal's capacity for simple, unskilled light work were "avoid work involving more than superficial contact with supervisors, coworkers, and the general public. . . . [and no] . . . overhead work with the left arm."  (T. 61 62). No environmental or other limitations related to COPD were imposed.

# IV. Points of Alleged Error

Royal argues that ALJ Armstrong committed several errors listed verbatim and without commentary in the note below.[9] (Dkt. No. 13, p. 1.). Most of the asserted errors, although analytically distinct, are interrelated such that they are examined and discussed together in the next section.

# V. Application and Analysis

### A. *Step 2 Finding That COPD Not A Severe Impairment*

#### 1. Definitions

Under the Commissioner's regulation, "[a] 'severe' impairment is one that significantly limits an individual's physical or mental ability to do 'basic work activities.' " *Meadors*, 370 Fed. App'x at 182 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also* 20 C.F.R. § 416.921(b) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities").[10] Consequently, "mere presence of a disease or impairment, or

---

[9]    Royal argues the following points of error: (1) ALJ Armstrong erred at Step 2 when he failed to find that Royal's chronic obstructive pulmonary disease was a severe impairment; (2) ALJ Armstrong erred at Step 3 when he failed to find that Royal's dysthymic disorder, generalized anxiety disorder, and bipolar disorder met listing 12.04; (3) The Residual Functional Capacity determination is a product of legal error; (4) ALJ Armstrong failed to apply the appropriate legal standards when he found Royal not fully credible; and (5) ALJ Armstrong's Step 5 determination is not supported by substantial evidence and is the product of legal error. (Dkt. No. 13).

[10]    Regulations define "basic work activities" as "abilities and aptitudes necessary to do most jobs," examples of which include: (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co workers and usual work situations; and, (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); *see also* SSR 85 28: "TITLES II AND XVI: MEDICAL IMPAIRMENTS THAT ARE NOT SEVERE," 1985 WL 56856, at *3 4 (S.S.A. 1985)

establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008) (citing *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

The phrase "significantly limits," however, might be interpreted as setting the bar so high as to be tantamount to an ultimate determination of disability. In this circuit, however, a Step 2 inquiry serves only to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen*, 482 U.S. at 154 n. 12).

### 2.    Factual Error

To justify finding that Royal's COPD is not a severe impairment, ALJ Armstrong emphasized that Royal "was not taking any medications for COPD." (T. 60, 187). This, bluntly, is wrong. Ample evidence reveals that Royal takes *several* medications for her COPD and asthma. (T. 147, 166, 212, 238, 242, 248, 299). ALJ Armstrong apparently was confused by Royal's own report of her current medications which, on the front side of the page, did not list COPD or asthma medications. (T. 59-60, 187). But, Royal clearly noted, there was "more on back" regarding her current medications. (T. 187). Unfortunately, the back side of that page is not part of the administrative record before the court, and may not have been included in materials considered by ALJ Armstrong. (T. 187-88). Under these circumstances, not even a scintilla of evidence supports this important finding relating to the severity of Royal's COPD impairment.

3.    Other Flawed Reasons

ALJ Armstrong did cite other reasons for finding Royal's COPD non-severe.  He noted a June, 2007, physical examination by a nurse practitioner wherein Royal's lungs were found to be "clear auscultation, no rhonchi or wheezes." (T. 59-60, 212).  He also cites to a July, 2007, report of a consultative medical examination performed by Dr. Berton Shayevitz, M.D. ("Dr. Shayevitz") who observed no evidence of *acute* respiratory distress or wheezing on auscultation of the chest.  (T. 248).

In some instances, these reasons might suffice.  But, when viewed in proper context, they do not here because ALJ Armstrong conspicuously ignored more critical aspects of both reports.  Laboratory tests performed at the time of the nurse practitioner's examination revealed elevated hemoglobin and hematocrit, both suggesting hypoxia associated with COPD.  (T. 212).  Upon physical examination, Dr. Shayevitz reported that Royal had a slightly *productive sounding cough*, *distant breath sounds*, and a slightly *long expiratory phase* .  (T. 244).  Dr. Shayevitz performed actual pulmonary function testing, and formally diagnosed Royal as having COPD.[11]    (T. 245, 248-255).  He interpreted these tests as disclosing "mild obstruction."  (T. 245).  Significantly, they also disclosed absolutely "no response to dilators."  (T. 248).

In effect, ALJ Armstrong "cherry picked" the evidence, relying on some statements to support his conclusion, while ignoring other substantive detail to the contrary from the same sources.  This, however, does not satisfy a substantial evidence standard.  While ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence that supports a particular

---

[11]    Royal reported to Dr. Shayevitz that she had been diagnosed in March 2007 with chronic obstructive bronchopulmonary disease that she asserted "goes back about five or six years."  (T. 242).

conclusion. *See Smith v. Bowen,* 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175  76 (2d Cir. 1983)); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ( "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

The court has no way of knowing whether ALJ Armstrong would have made the same finding had he acknowledged, weighed and factored in all of the relevant evidence.[12] But, when he based his finding on a patently unreasonable and wrong factual understanding of the record regarding COPD/asthma medications (a factor that he considered significant), and when he cherry-picked portions of medical examination reports indicating no *acute* distress while ignoring portions of the same reports indicating a condition representing *chronic* reduction to health and capacity, a reviewing court cannot conclude that the non-severity determination was based on evidence a reasonable mind might accept as adequate to support the conclusion. Hence, ALJ Armstrong's finding at Step 2  that Royal's COPD is non-severe  is not supported by substantial evidence.

---

[12]     The court is unaware of any authoritative source stating that COPD is a *per se* severe impairment within the meaning of the sequential evaluation process.  Therefore, there may be instances where COPD does not constitute a severe impairment.  On the other hand, COPD, by definition, is a chronic, incurable, progressive disease.  It usually is not tolerated without professional attention, nor is it expected to go away in two or three days through use of home remedies.  Given its effect on breathing, the notion that it produces no more than minimal effect on a claimant's ability to work seems unlikely.

4.  <u>Significance of Proceeding Through Step 5 of the Analysis</u>

An erroneous Step 2 finding is not always fatal. When   as here   an ALJ proceeds to remaining steps in the sequential evaluation process,[13] the effect may be blunted by taking an impairment (erroneously determined "non-severe" at Step 2) into proper account during the residual functional capacity determination at Step 4. *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 (2d Cir. 2010)(noting, in *dicta,* that there was no error by ALJ in finding disc herniation non-severe because ALJ did identify other severe claims at Step 2 so that claim proceeded though the sequential evaluation process and all impairments were considered in combination).[14] That form of redemption does not exist here, however, because ALJ Armstrong did not take Royal's COPD into proper account when he made his ultimate RFC determination. Rather, he perpetuated the error by again stating that current medical records reflect no COPD-related limitations. As noted above, this is patently incorrect. This mistaken belief (that Royal has no current COPD medications or other objectively documented symptoms) caused him to reject a New York disability examiner's RFC assessment that Royal's ability to perform light work is limited by her need to "avoid concentrated exposure to environmental irritants (such as fumes, odors, dusts, etc.)." (T. 64, citing T. 272-75).

---

[13]    ALJ Armstrong continued the sequential analysis beyond Step 2 because he found that Royal's other impairments, left shoulder impingement, degenerative disc disease of the cervical and lumbar spine, and affective disorder are severe. (T. 59).

[14]    *See also McCartney v. Commissioner of Soc. Sec.*, Civil Action No. 07 1572, 2009 WL 1323578, at *16 (W.D. Pa. May 8, 2009) ("Even if the Court was *(sic)* to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non severe impairments."); *Portorreal v. Astrue*, No. C.A. 07 296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

*B.      Credibility Error*

As just described, the Step 2 error leeched itself into ensuant analytical substrata with contaminating effect.   Another example stems from ALJ Armstrong's failure to evaluate effectiveness and side effects of medications as required by the regulation cited earlier in note 6, when he determined credibility of Royal's subjective complaints.[15]  This, undoubtedly, was precipitated by ALJ Armstrong's mistaken belief that there were no *current* medications for COPD. But, as described above, there were several such medications, and there was evidence as to ineffectiveness thereof.   (T. 245, 248).   Similarly, there was evidence of various medications for Royal's affective disorder (Seroquel, Depakote, Prozac (T. 278, 287, 290, 307, 311)), and for pain (Darvocet, Motrin 800 mgs. every 6 hours, Tylenol Extra Strength 500 mgs. q4 to 6 hours (T. 32-33, 38, 187, 212, 238), and conflicting evidence of side effects attributable to the pain medication.  (T. 33-34, 38).   Disregard of this regulatory requirement constitutes failure to apply correct principles of law.[16]

---

[15]      Generally, substantive regulations have the force and effect of law, and always bind private parties and the government.   Moreover, as set forth in the Administrative Procedure Act, they are binding on federal courts when authorized by and consistent with the statute they implement, properly promulgated, and are "not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."   5 U.S.C. §§ 706 (2)(A), (C); *see Chrysler Corp. v. Brown*, 441 U.S. 281, 295 96 (1979); *Batterton v. Francis*, 432 U.S. 416, 425 (1977); *DeJesus v. Perales*, 770 F.2d 316, 327 (2d Cir. 1985), *cert. denied*, 478 U.S. 1007 (1986) (Although we do not abdicate review in these circumstances, our task is the limited one of ensuring that the Secretary did not "excee[d] his statutory authority" and that the regulation is not arbitrary or capricious).

[16]      To be fair, ALJ Armstrong did take into account one pain medication, Motrin, when determining credibility of Royal's subjective testimony regarding pain attributable to a separate impairment, bursitis.   Without citing any authoritative medical source, he declared that Motrin is not a medicine typically used to treat disabling physical impairments.   (T. 66).

## C. *Residual Functional Capacity Error*

Another example of the Step 2 error poisoning the well occurred when ALJ Armstrong determined Royal's RFC.  As mentioned earlier, the governing Regulation identifies several ordinary physical functions to be considered in the context of an ordinary work schedule when assessing RFC.[17] The Commissioner's interpretive Ruling requires these to be assessed function-by-function before expressing RFC in terms of exertional levels of work.[18]  Moreover, a RFC determination must account for limitations imposed by both severe and non-severe impairments.  *See* 20 C.F.R. § 416.945(a)(2); *Parker-Grose v. Astrue*, 462 Fed. App'x 16, 18 (2d Cir. 2012) (Because ALJ's finding that Parker  Grose's mental impairment is non-severe is not supported by substantial evidence and

---

[17]     RFC must consider a claimant's ability to meet the physical, mental, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of 20 C.F.R. § 416.945:

(b) Physical abilities. . . .certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), . . . .

(c) Mental abilities. . . .certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting . . . .

(d) Other abilities affected by impairment(s). Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions . . ..

[18]     SSR 96 8p provides, in pertinent part:

The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work related abilities on a function by function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96 8p, POLICY INTERPRETATION RULING TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS ("SSR 96 8p"), 1996 WL 374184, at *1, 3 (S.S.A. July 2, 1996).

the ALJ failed to account for any functional limitations arising from Parker Grose's depression when determining her RFC, the matter must be remanded).

ALJ Armstrong wholly failed to discuss and identify any potential physical factor limitations ordinarily found in individuals with COPD, *i.e.*, physical stamina and strength impediments to standing, lifting, carrying, pushing and pulling, or environmental limitations. (T. 57-69). The only logical explanation for this omission is ALJ Armstrong's mistaken conclusion that Royal's COPD is so minor as to require no medication, and his concomitant apparent misconception that *acute* distress is a prerequisite for a severe COPD impairment. This misconception might have been avoided had ALJ Armstrong adhered to his affirmative obligation to develop Royal's medical history with respect to her physical limitations by obtaining the opinion of any of Royal's treating physicians on functional capacity. *See Petrie v. Astrue*, 412 Fed. App'x 401, 406 (2d Cir. 2011); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel.").

Whatever the reason, failure to make a function-by-function analysis of physical factors stated in the regulation again constitutes another failure to apply proper legal standards established by SSR 96-8p,[19] and such an error

---

[19] Social Security Rulings constitute the Commissioner's internal policy and interpretations, and, therefore, lack the force of law. *See Chrysler Corp.*, 441 U.S. at 295 96; *Batterton*, 432 U.S. at 425. As such, they are not binding on courts, but are "binding on all components of the Social Security Administration," and represent statements of policy and interpretations that have been adopted by the Administration. 20 C.F.R. § 402.35(b)(1); *see also Capitano v. Secretary of Health & Human Servs.*, No. 83 6231, 1984 WL 63640, at *1 (2d Cir. Aug. 17, 1984)(Social Security Rulings are considered "interpretive and not binding on this court").

(continued...)

prevents the court from concluding that the RFC determination is supported by substantial evidence. *See, e.g., Hilsdorf v. Commissioner of Soc. Sec.*, 724 F. Supp. 2d 330, 349 (E.D.N.Y. 2010) (RFC determination cannot be upheld where ALJ failed to assess Plaintiff's exertional and postural abilities on a function-by-function basis) (citing *Brown v. Barnhart*, No. 01 CV 2962, 2002 WL 603044, at *5 7 (E.D.N.Y. Apr. 15, 2002) ("[B]ecause the ALJ did not properly apply the legal standard in Social Security Ruling 96 8p for assessing residual functional capacity, court cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her past work was supported by substantial evidence.")); *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk . . . . Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence.").

## D.   *Impact on Expert Vocational Testimony*

Finally, these flawed assessments of Royal's credibility and of her RFC inevitably colored the hypothetical questions posed to VE Kehr. Expert vocational testimony constitutes substantial evidence only when the hypothetical question accurately and precisely portrays a claimant's physical and mental impairments. *See DeLeon v. Secretary of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) (finding that, as a result of the ALJ's failure to present the full

---

[19](...continued)

Rulings, however, are "entitled to deference except when they are plainly erroneous or inconsistent with the [Social Security] Act." *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995), *cert. denied*, 517 U.S. 1103 (1996). Moreover, courts frequently rely on Rulings when evaluating ALJs' decisions, and will reverse when failure to follow a Ruling results in prejudice. *Ginsberg v. Astrue*, No. 05 CV 3696, 2008 WL 3876067, at *10 (E.D.N.Y. Aug. 18, 2008) (Failure to properly apply SSR 99 2p in cases involving Chronic Fatigue Syndrome is a ground for remand); *see also Myers v. Apfel*, 238 F.3d 617, 620 621 (5th Cir. 2001).

extent of the claimant's physical abilities, the record provided no basis for drawing conclusions about whether the claimant's physical and mental impairments rendered him disabled); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996) (explaining that VE's testimony was unreliable because the ALJ based his questions on hypothetical examples which did not accurately describe the claimant's abilities). It strains credulity to suggest that a person with COPD (*i.e.*, a person whose damaged air sacs make it more difficult to push air out and leave less room for fresh air to come in, resulting in elevated levels of hemoglobin and hematocrit) has *zero* exertional or non-exertional limitations attributable to that illness. Yet, VE Kehr was not asked to factor in any complications of COPD when considering whether jobs are available in substantial numbers in the economy that a person with Royal's impairments can perform. (T. 41-50).

What difference, if any, additional limitations occasioned by Royal's mild form of COPD might have made to VE Kehr is, of course, unknown. But, from the court's remote vantage point, it appears more likely than not that Royal's already-narrow occupational base would be further eroded by such limitations. This generates lack of confidence that the vocational testimony elicited at the video evidentiary hearing crosses the substantial evidence threshold.

## VI. Recommendations

1. The Commissioner's decision should be **REVERSED** and the case **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings including reexamination of (a) whether plaintiff's COPD is a severe impairment under this circuit's *de minimis* standard (including receipt of further evidence, if deemed necessary, regarding dosage, effectiveness and side effects of plaintiff's COPD medications), (b) credibility of plaintiff's subjective testimony in accordance with correct principles of law, (c) plaintiff's residual functional

capacity in accordance with correct principles of law, and (d) expert vocational testimony that takes into account all of Royal's physical and mental-limitations.

2.    To guard against necessity for further actions seeking judicial review, the court also should request the Commissioner to reconsider his decision in light of *all* errors asserted in this action and, on remand, should develop Royal's medical history with respect to her physical limitations by obtaining the opinion of Royal's treating physicians on functional capacity.

## VI.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the __2__ day of __October__, 2012.

Earl S. Hines
United States Magistrate Judge